IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN SHULER and<br>HEATHER FIORELLA<br><br>Defendants. | Case No. CR07-0060<br><br>REPORT AND RECOMMENDATION |

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A. March 16, 2007, State Court Search Warrant . . . . . . . . . . . . . . 2
    B. May 16, 2007, Federal Court Search Warrant . . . . . . . . . . . . . 4
    C. June 6, 2007, Federal Court Search Warrant . . . . . . . . . . . . . . 6

IV. ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    A. Was the State Court Search Warrant Supported By Probable Cause? . . . 7
    B. Is the Evidence Otherwise Admissible Pursuant to the
        Independent Source Doctrine? . . . . . . . . . . . . . . . . . . . . . . . 11
    C. Does the Leon Good Faith Exception Apply? . . . . . . . . . . . . . . 13

V. SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VI. RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## I. INTRODUCTION

On the 5th day of September 2007, this matter came on for Hearing on the Joint Defense Motion to Suppress (docket number 22) filed by the Defendants on August 27, 2007. The Government was represented by Assistant United States Attorney Ian K. Thornhill. Defendant John Shuler appeared personally and was represented by his attorney, Jane Kelly. Defendant Heather Fiorella also appeared personally and was represented by her attorney, Michael K. Lahammer.

## II. ISSUE PRESENTED

Defendants claim that a state court Search Warrant issued for their home on March 16, 2007, was not supported by probable cause and, therefore, the evidence seized from a search of the residence must be suppressed. Defendants further argue that "[i]f this motion is granted, all evidence seized as a result of the execution of the subsequent federal warrant should be suppressed as well."[1]

The Government argues that the state court Search Warrant was supported by probable cause. In the alternative, the Government argues that the evidence would have been discovered in an independent investigation being conducted by the Federal Bureau of Investigation ("FBI") and is therefore admissible pursuant to the independent source doctrine. Furthermore, the Government argues that the good faith exception found in *United States v. Leon*, 468 U.S. 897 (1984), is applicable here.

## III. RELEVANT FACTS

### A. March 16, 2007, State Court Search Warrant

On March 16, 2007, Officer Martin K. DeVore of the Cedar Rapids Police Department submitted an Application for Search Warrant to a Linn County judicial officer.[2] In his Application, Officer DeVore requested authority to search a residence

---

[1] *See* Brief in Support of Joint Defense Motion to Suppress (docket number 22-2) at 5.

[2] The signature of the judicial officer on the Application and resulting Search Warrant are illegible, and the judicial officer is not otherwise identified.

located on 22nd Street in Cedar Rapids.[3] The Application for Search Warrant was supported by "Attachment A" prepared by Officer DeVore.[4]

According to Attachment A, Officer DeVore was contacted on March 16, 2007, by Detective Randy Kessler of the Marshalltown Police Department. Officer DeVore described the "[p]rogression of events" as follows:

> On 03-03-07 Marshalltown Police Department Officer Siegert took a report for possible pornography. This report was followed by Detective Kessler. During his investigation it was found by reviewing the chat logs provided by the complaintant [sic] that someone was talking about females ages 15, 12 & 10 being involved in sexual activities with other children and possibly being video taped and photographed. The complainant also received e-mailed copies of photographs of juvenile females not clothed and in various stages of being clothed exposing the genitilia [sic] region. There were also numerous references in the chat logs to having sex with young females or males possibly living within the household.

*See* Application and Affidavit for Search Warrant (Government's Exhibit 1), Enclosure 1, Attachment A.

Officer DeVore goes on to explain in Attachment A how the "chat" was traced to Defendant Heather Fiorella. The name used by the party involved in the chat was "hot_cr_couple." A subpoena served on Yahoo provided user information relating to "hot_cr_couple." An IP address was determined and account information was then provided by subpoena served on Mediacom. The account was registered to Heather Gonsorcik.[5] The account information, driver's license registration, and information held

---

[3]While the specific street address is identified in the Application and the Search Warrant, it will not be listed here, pursuant to Local Rule 10.1.h.9. Defendants do not argue that the Application or the Search Warrant do not properly identify the residence.

[4]The state court Application for Search Warrant (including Attachment A), Search Warrant, and Return, were subsequently attached to Applications for Search Warrants submitted in federal court, which were introduced at the Hearing as Government's Exhibits 1 and 2 and filed under seal.

[5]It is undisputed that Defendant Heather Fiorella is also known as Heather Gonsorcik. For convenience and clarity, the Court will consistently refer to the Defendant as Heather Fiorella.

by the Cedar Rapids Police Department all indicated that Fiorella lived at the address shown on the Application for Search Warrant. In addition, Officer DeVore drove past the residence and observed a vehicle registered to Fiorella. At the time of Hearing, Ms. Kelly conceded that there was probable cause stated in the Application to establish that the "chat" originated from the residence described in the Application, but argued that the substantive allegations in Attachment A do not support a finding of probable cause.

As set forth in the excerpt from Attachment A above, a review of the chat logs by Detective Kessler reflected "someone was talking about females ages 15, 12 & 10 being involved in sexual activities with other children and possibly being video taped and photographed." The chat logs also contained numerous references "to having sex with young females or males possibly living within the household." In addition to establishing that the chats originated from the home occupied by Defendant Heather Fiorella, Officer DeVore advised the judicial officer in Attachment A that Fiorella "has a 12 year old daughter."

Acting on the Application for Search Warrant provided by Officer DeVore, a Linn County judicial officer issued a Search Warrant on the home occupied by Defendant Heather Fiorella. The Search Warrant was executed later the same day, resulting in the seizure of various computers, computer equipment, cameras, CDs, videotapes, and photographs.[6]

### B. May 16, 2007, Federal Court Search Warrant

On May 16, 2007, Officer Charity Hansel, an investigator with the Cedar Rapids Police Department, submitted an Application and Affidavit for Search Warrant (Government's Exhibit 1) to the undersigned Magistrate Judge. Investigator Hansel requested authority to search certain computers and hard drives which were seized from the residence on 22nd Street pursuant to the state court Search Warrant executed on March 16, 2007. The Application was supported by an Affidavit signed by Investigator Hansel,

---

[6]*See* Application and Affidavit for Search Warrant (Government's Exhibit 1) Enclosure 1, Return to Search Warrant.

which referenced "Enclosure 1" (consisting of the state court Application, Search Warrant, and Return).

In her Affidavit, Investigator Hansel stated that she is assigned to the Sex Crimes Unit of the Cedar Rapids Police Department. The Affidavit recounts the circumstances surrounding the issuance of the state court Search Warrant and resulting search. According to the Affidavit, "'hot_cr_couple' indicated they were swingers and had sent the resident in Marshalltown 16 pictures including prepubescent girls, both nude and with clothing on." Investigator Hansel further averred that the images originated from the residence on 22nd Street in Cedar Rapids and that "Heather Gonsorcik resided at this address with her minor daughter, age 12." The Affidavit states further that an investigator with the Cedar Rapids Police Department was provided with a compact disc containing the images transmitted from Defendants' residence.

> Marshalltown Police Department met with an investigator from Cedar Rapids Police Department and provided a compact disc with copies of the images, which were sent to their complainant. In viewing these images, there were several images with white prepubescent females without any clothing on in lascivious display and the pictures seemed to focus on their genitalia. In a portion of the chat log, it is indicated the people in Cedar Rapids chatting are a white female, age 31, and a white male, age 41. In checking Heather Gonsorcik's information, she is a white female, age 31.

*See* Application and Affidavit for Search Warrant (Government's Exhibit 1), Attachment A, p. 5, ¶ 10. The Affidavit further states that a state Search Warrant (Enclosure 1) was obtained for the residence on 22nd Street and that during the search, "Heather Gonsorcik and a second person who verbally identified himself as John Shuler, age 41, arrived and were detained." *Id.* at ¶ 11. Found in Shuler's wallet were two pictures of Fiorella's "12-year old daughter without any clothes on in a lascivious display." *Id.*

For whatever reason, the Application sought only a search of the computer equipment, but did not seek a warrant relating to computer discs or video tapes which were

5
Case 1:07-cr-00060-LRR    Document 38    Filed 09/18/07    Page 5 of 16

also seized at that time. The Court issued a Search Warrant pursuant to the application, authorizing a search of several computers and hard drives previously seized.

### C. *June 6, 2007, Federal Court Search Warrant*

Meanwhile, Special Agent Michael Kitsmiller of the FBI testified at the instant Hearing that the FBI had initiated an investigation in June 2006, following a complaint filed with the Bettendorf Police Department. The complainant reported that e-mails had been received which included child pornography. The Bettendorf Police Department served a subpoena on Yahoo and it was determined that the source of the e-mails was Heather Gonsorcik (Fiorella) in Cedar Rapids. This information was apparently not acted upon, however, until the case was assigned to Special Agent Kitsmiller in May 2007. At that time, Kitsmiller contacted the Cedar Rapids Police Department and was advised that it had already executed a Search Warrant on Fiorella's home following a similar complaint received from the Marshalltown Police Department.

On June 6, 2007, Special Agent Kitsmiller submitted an Application and an Affidavit for Search Warrant (Government's Exhibit 2) to the undersigned Magistrate Judge. Special Agent Kitsmiller requested authority to search the video cassette tapes, compact discs, floppy disks, mini video cassette tapes, and a flash drive, which were seized from the residence on 22nd Street pursuant to the state court Search Warrant executed on March 16, 2007. The Application was supported by an Affidavit signed by Special Agent Kitsmiller, which referenced "Enclosure 1" (consisting of the state court application, Search Warrant, and return).

The Affidavit signed by Special Agent Kitsmiller included the same background information provided by Investigator Hansel in her Affidavit filed in support of the May 16, 2007, federal court Search Warrant. In addition, Special Agent Kitsmiller's Affidavit advised the Court regarding a separate investigation by the Bettendorf Police Department.

According to the Affidavit, a complainant contacted the Bettendorf Police Department on or about June 12, 2006, and advised them that he had been chatting online with a person using the screen name "nsurchof12incher." The complainant reported that

6

"nsurchof12incher" told him he had photos and video images of himself having sex with his own children and sent the complainant computer files containing child pornography. According to the Affidavit, the complainant talked to "nsurchof12incher" on the phone on more than one occasion and "eventually 'nsurchof12incher' began pressuring the complainant to meet with him, his wife Heather and their 7th grade daughter in order for all of them to have sex." *See* Application and Affidavit for Search Warrant (Government's Exhibit 2), Aff. 6, ¶ 14. The complainant also reported that he "saw 'nsurchof12incher' and his wife, Heather, via a live webcam during one of their chats and later identified John Shuler and Heather Gonsorcik." *Id.* The Affidavit further states that the complainant provided the Bettendorf Police Department with copies of the child pornography sent to him by Shuler. The Court issued a Search Warrant pursuant to the Application, authorizing a search of computer disks, compact discs, flash drives, mini video cassette tapes, and video cassette tapes previously seized.

## IV. ANALYSIS

### A. *Was the State Court Search Warrant Supported By Probable Cause?*

The Fourth Amendment to the United States Constitution protects persons and their houses against unreasonable searches and seizures. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Stated otherwise:

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause to issue the warrant has been established.

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). The Court examines the sufficiency of a Search Warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Id.* at 632 (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)).

In *Grant*, the Defendant entered a conditional plea of guilty to two counts of possessing child pornography, but appealed the denial of his Motion to Suppress. There, a Nebraska state patrol officer was advised by a deputy sheriff that the owner of a computer-repair business had telephoned the sheriff's office to report the discovery of child pornography on a home computer. 490 F.3d at 629. The trooper subsequently met with the business owner and was advised that one of the computer technicians observed what he believed to be "child pornography" on a computer that had been dropped off at the business for repair. While the trooper did not actually observe the images, he reported in an affidavit filed in support of a Search Warrant that the technician had "found pornography on several computers but believed that what he found on the [Defendant's] computer to be child pornography." *Id.* at 630. The Defendant argued that the affidavit lacked probable cause to support the issuance of a warrant to search the computer.

> [Defendant] contends that because [the trooper] did not personally observe the images that [the computer technician and business owner] concluded were child pornography, did not include detailed descriptions of these images in his affidavit, and did not otherwise corroborate that the images were in fact "child pornography" as defined in the applicable statutes, [the trooper's] affidavit amounted to nothing more than "the bare conclusions of a concerned citizen" that child pornography had been found on the computer.

*Id.* at 633. The majority rejected Defendant's argument, however, concluding "that the affidavit was sufficient to establish probable cause for the issuance of the search warrant." *Id.* at 632. The appellate court agreed with the district court that the computer technician was "uniquely able, and properly motivated, to distinguish between child pornography and lawful images." *Id.*

Turning to the facts in the instant action, Officer DeVore advised the issuing magistrate that (1) the Marshalltown Police Department received a report of "possible pornography," (2) the complainant provided authorities with a copy of the chat logs, (3) a review of the chat logs by officers reflected "that someone was talking about females ages 15, 12 & 10 being involved in sexual activities with other children and possibly being video taped and photographed," (4) the complainant "also received e-mailed copies of photographs of juvenile females not clothed and in various stages of being clothed exposing the genitilia [sic] region," and (5) there were numerous references in the chat logs "to having sex with young females or males possibly living within the household." The issuing magistrate was also advised that further investigation by authorities revealed that (1) the chats originated from the residence of Heather Gonsorcik (Fiorella), and (2) Fiorella "has a 12 year old daughter."

In support of their Motion to Suppress, Defendants note that the complainant "is not named, nor is he or she further described in any meaningful way."[7] No information is provided regarding whether the complainant was previously known to law enforcement, whether the complainant had provided reliable information in the past, or the circumstances surrounding the production of the information. Defendants further argue that the complainant's information "is also not sufficiently corroborated to render that information reliable."[8]

"When the affidavit is based on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable cause to support the search." *Solomon*, 432 F.3d at 827. Here, it was averred that the complainant had first-hand knowledge of the transmission of photographs depicting unclothed "juvenile females." The Affidavit is silent, however, regarding whether the

---

[7] *See* Brief in Support of Joint Defense Motion to Suppress (docket number 22-2) at 2.

[8] *See Id.* at 3.

complainant had provided reliable information in the past, or whether there were any other reasons why the complainant should be considered truthful.

The Defendants note that while the Affidavit infers that the chat logs were "reviewed" by authorities, the Affidavit does not explicitly state that the "e-mailed copies of photographs of juvenile females" were received and reviewed by authorities prior to the filing of the Affidavit. The Government notes that the Affidavit subsequently filed by Investigator Hansel in support of the May 16, 2007, federal court Search Warrant states that the Marshalltown Police Department met with an investigator from the Cedar Rapids Police Department and "provided a compact disc with copies of the images, which were sent to their complainant."[9] In viewing the sufficiency of the state court Search Warrant, however, the Court may only consider information that was submitted to the issuing magistrate. *Solomon*, 432 F.3d at 827.

When determining whether the totality of the circumstances supports a finding of probable cause, however, the Court may consider whether the information supplied by the informant is corroborated by other information known to law enforcement. *United States v. Carter*, 413 F.3d 712, 714 (8th Cir. 2005) ("A premium is indeed placed on corroboration of the tip by independent evidence and evidence of past reliability in cases where the statements of a confidential informant provide the basis for probable cause."). "It is well established that 'even the corroboration of minor, innocent details can suffice to establish probable cause.'" *Solomon*, 432 F.2d at 828 (quoting *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001)).

In the instant action, the complainant reported communication online with another individual involving child pornography. This report was corroborated by law enforcement reviewing the chat logs and establishing that the communications originated from the residence of Heather Gonsorcik (Fiorella). The chat logs also contained numerous references to having sex with young females or males possibly living within the household.

---

[9]*See* Application and Affidavit for Search Warrant (Government's Exhibit 1), Attachment A, at 5, ¶ 10.

The issuing magistrate was advised in the supporting Affidavit that Fiorella had a 12-year-old daughter. The issuing magistrate was also advised that the complainant received e-mailed copies of nude juvenile females exposing their genitalia, although the Affidavit is imprecise regarding whether those images were reviewed by law enforcement prior to seeking a search warrant.

Given all of the circumstances set forth in the Affidavit, the Court concludes that there was a "fair probability" that evidence of a crime could be found at Fiorella's residence. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The complainant reported receipt of chats involving child pornography. Law enforcement independently corroborated that evidence by a review of the chat logs. Law enforcement also established that Fiorella had a 12-year-old daughter, which was consistent with information found in the chat logs. While it is unclear that law enforcement actually reviewed the photographs received by the complainant prior to seeking a warrant, it is not necessary that each and every piece of information supplied by the informant be independently corroborated. Applying a "common-sense approach," the Court concludes that the details corroborated by law enforcement were sufficient to establish the complainant's reliability, veracity, and basis of knowledge. In summary, the Court concludes that the state court Search Warrant issued on March 16, 2007, was supported by probable cause.[10]

### B. Is the Evidence Otherwise Admissible Pursuant to the Independent Source Doctrine?

As indicated above, the Court concludes that there was probable cause to support the state court Search Warrant. Accordingly, I believe it is unnecessary to consider the Government's argument that admission of the evidence is otherwise permitted pursuant to the independent source doctrine. Since the district court may disagree with my analysis of the probable cause issue, however, the Court will also address the Government's second argument.

---

[10]Defendants concede that if the state court Search Warrant was supported by probable cause, then the subsequent federal court Search Warrants provided probable cause to search the computers, hard drives, computer disks, and video tapes seized pursuant to the initial warrant.

The independent source doctrine was summarized succinctly by the Eighth Circuit Court of Appeals, as follows:

> The independent source doctrine provides that evidence initially discovered during an unlawful search, but later obtained independently through activities untainted by the illegality, may be admitted into evidence. This rule is rooted in the view that the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred. To establish that the independent source doctrine applies to evidence seized pursuant to a warrant obtained after an unlawful entry to a home, the government must show both (1) that the decision to seek the warrant was independent of the unlawful entry -- i.e., that police would have sought the warrant even if the initial entry had not occurred -- and (2) that the information obtained through the unlawful entry did not affect the magistrate's decision to issue the warrant.

*United States v. Khabeer*, 410 F.3d 477, 483 (8th Cir. 2005) (citations and internal quotations omitted).

The March 16, 2007, state court Search Warrant was obtained by the Cedar Rapids Police Department, acting on a complaint initially lodged with the Marshalltown Police Department. The evidence offered at the instant Hearing established, however, that the FBI was conducting an independent investigation involving the same defendants, acting on a complaint initially made with the Bettendorf Police Department. Special Agent Kitsmiller testified that the FBI initiated an investigation in June 2006, although it was not actively pursued until Kitsmiller was assigned to the case in May 2007.

According to the information provided by Special Agent Kitsmiller in support of the June 6, 2007, federal court Search Warrant, the Bettendorf Police Department was contacted on or about June 12, 2006, regarding a person using the screen name "nsurchof12incher," who stated that he had photos and video images of himself having sex with his own children. "Nsurchof12incher" provided the complainant with computer files

containing child pornography. The complainant provided the Bettendorf Police Department with copies of the child pornography sent to him by Shuler. The complainant was apparently able to identify Shuler and Fiorella "via a live webcam during one of their chats."[11]

By the time Special Agent Kitsmiller contacted Cedar Rapids law enforcement in May 2007, they had already obtained and executed the March 16, 2007, state court Search Warrant. Special Agent Kitsmiller testified at the instant Hearing that if the computers and related materials had not previously been seized by the Cedar Rapids Police Department, then he would have sought a search warrant based on the information gathered on the Bettendorf complaint. Bettendorf authorities had been provided copies of the child pornography which originated at Defendants' home, and the Court believes that there would have been probable cause to support a search warrant based on the Bettendorf information.

In summary, the Court concludes that even if the state court Search Warrant obtained by the Cedar Rapids Police Department was not supported by probable cause, the computers and related materials would have been obtained by the FBI pursuant to its independent investigation of a separate complaint. That is, the actions by the FBI in seeking a search warrant based on the Bettendorf information would be independent of any information obtained by the state court Search Warrant. Since probable cause existed for a second search warrant, independent of the information obtained in the first search warrant, the independent source doctrine applies.

### C. Does the Leon Good Faith Exception Apply?

Finally, the Government argues that the good faith exception enunciated in *United States v. Leon*, 468 U.S. 897 (1984), is applicable in any event. For the reasons set forth above, the Court believes that it is unnecessary for the district court to address the good faith exception, since there existed probable cause for the state court Search Warrant.

---

[11] *See* Application and Affidavit for Search Warrant (Government's Exhibit 2), Attachment A, at 6-7, ¶¶ 14-15.

13
Case 1:07-cr-00060-LRR   Document 38   Filed 09/18/07   Page 13 of 16

Nonetheless, the Court will address the issue in case the district court disagrees with its analysis on probable cause and the independent source doctrine.

The good faith exception provides that disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the magistrate's determination that there was probable cause to issue the warrant. *Leon*, 468 U.S. at 922. The Government may not rely on the good faith exception, however, if one of four circumstances are present.

> The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

*United States v. Grant*, 490 F.3d 627, 632-633.

The first circumstance set forth above describes a so-called "*Franks* violation."[12] In this case, Defendants do not point to any false statement or material omission from the affidavit submitted in support of the state court Search Warrant, which was made knowingly or intentionally or with reckless disregard for its truth. Therefore, the first circumstance which would invalidate the *Leon* good faith exception is inapplicable here.

Similarly, Defendants do not allege, and the evidence would not support a finding, that the magistrate or judge who issued the state court search warrant "wholly abandoned his judicial role." The judicial officer who issued the state court Search Warrant is not identified, but there is no indication that he or she had any animus toward the Defendants or other ulterior motive. Defendants are required to present some evidence that the

---

[12]*See Franks v. Delaware*, 438 U.S. 154 (1978).

magistrate was biased, or exhibited "a pattern of passive, automatic issuance of warrants." *United States v. Hallam*, 407 F.3d 942, 946 (8th Cir. 2005) (A magistrate who was "anxious to get back to bed," did not wholly abandon his judicial role.). There is no evidence that the issuing magistrate acted as a "rubber stamp for the police" or as "an adjunct law enforcement officer," rather than as a neutral and detached actor. *United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003).

The good faith exception does not apply if the Affidavit filed in support of the Warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." As set forth above, the Court has concluded that there existed probable cause for the issuance of the state court Search Warrant. It necessarily follows that I believe an officer could reasonably believe that the affidavit stated probable cause. Furthermore, when determining whether the officers relied in good faith on the validity of the search warrant, the Court may consider information known to the officers, but not provided to the issuing magistrate. *United States v. Rodriguez*, 484 F.3d 1006, 1011 (8th Cir. 2007) ("When assessing the good faith of the officers, we look to the totality of the circumstances, including any information known to the officers, but not included in the affidavit."). *See also United States v. Pruett*, ___ F.3d ___ (8th Cir. 2007), 2007 WL 2492582. While the issuing magistrate was not specifically advised that law enforcement had viewed the photographs prior to seeking a search warrant, subsequent Affidavits filed in support of the federal court Search Warrants suggest that Marshalltown police investigators were provided with a computer disk containing the objectionable images. That is, law enforcement authorities had apparently viewed the photos prior to seeking a search warrant. Accordingly, the Court believes that the officers acted reasonably in relying on the validity of the Search Warrant.

Other than their argument that the Affidavit did not support a finding of probable cause, Defendants do not argue that the Search Warrant was "facially deficient." Accordingly, the fourth circumstance which would invalidate the good faith exception is not applicable here.

15
Case 1:07-cr-00060-LRR   Document 38   Filed 09/18/07   Page 15 of 16

In summary, the Court concludes that even if the state court Search Warrant was not supported by probable cause, the evidence seized pursuant to the Warrant is nonetheless admissible pursuant to the good faith exception established by the Court in *Leon*.[13]

## V. SUMMARY

In their Joint Motion to Suppress, Defendants argue that the state court Search Warrant issued on March 16, 2007, was not supported by probable cause. For the reasons set forth above, I disagree. Even if probable cause was lacking for the issuance of the Search Warrant, however, I believe the evidence seized is nonetheless admissible pursuant to the independent source doctrine and the *Leon* good faith exception, as urged by the Government. Accordingly, the Joint Defense Motion to Suppress should be denied.

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **DENY** the Joint Defense Motion to Suppress (docket number 22) filed by the Defendants on August 27, 2007.

The parties are advised, pursuant to 18 U.S.C. § 636(b)(1)(B), that within ten (10) days after being served with a copy of these proposed findings and recommendations, any party may serve and file written objections with the district court.

DATED this 17th day of September, 2007.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA

---

[13] If the district court concludes that the *Leon* good faith exception is applicable, then it need not address the issue of whether the state court Search Warrant is supported by probable cause. *See, e.g., United States v. Puckett*, 466 F.3d 626, 629 (8th Cir. 2006); *United States v. Ross*, 487 F.3d 1120, 1122 (8th Cir. 2007); *United States v. Pruett*, ___ F.3d ___ (8th Cir. 2007), 2007 WL 2492582 at *2 ("If the District Court was correct in concluding that the *Leon* good-faith exception to the exclusionary rule applies, it is unnecessary for us to engage in a probable-cause analysis.").